IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01138-PAB-KMT

ROBERT SCOTT BERRY,

    Plaintiff,

v.

CITY OF MONTROSE, COLORADO;
MICHAEL L. WATSON, Detective, Montrose Police Department, in his official capacity;
LARRY ABEYTA, Detective, Montrose Police Department, in his official capacity; and
GARY CORAM,

    Defendants.

## ORDER

This matter is before the Court on defendant Gary Coram's FED.R.CIV.P. 12(b)(6) Motion to Dismiss [Docket No. 17] and the Motion to Dismiss [Docket No. 19] filed by defendants City of Montrose, Michael L. Watson, and Lenny Abeyta.[1] This case arises out of plaintiff Robert Scott Berry's removal of a surveillance camera belonging to the Montrose Police Department from a common area of the building in which he runs his business and his subsequent arrest.

## I. BACKGROUND

In his complaint, Mr. Berry alleges as follows. On October 1, 1997, Mr. Berry purchased property from Mr. Coram located at 2400 E. Main Street in Montrose. Docket No. 2 at 4, ¶ 14. Mr. Coram is one of the owners of 2400 E. Main Street and

---

[1] Detective Abeyta's first name is "Lenny." Docket No. 19 at 1 n.1.

conducts his business out of that address. *Id.* at 4, ¶ 10. Mr. Berry operates a business in Unit D at this location. *Id.* at 1, ¶ 1. The Articles of Agreement for Warranty Deed governing the sale contain Mr. Coram's agreement not to encumber the property "in any manner" without Mr. Berry's consent. Docket No. 2 at 5, ¶ 15. Mr. Coram violated this provision of the Articles of Agreement several times,[2] leading to an ongoing dispute between Mr. Berry and Mr. Coram. Docket No. 2 at 5, ¶ 17. Beginning in April 2011, Mr. Coram filed a number of reports against Mr. Berry with the Montrose Police Department ("MPD"). Docket No. 2 at 5, ¶ 18. These reports contained false allegations regarding Mr. Berry's conduct. Docket No. 2 at 5, ¶ 19. None of these reports resulted in charges being brought against Mr. Berry. Docket No. 2 at 5-8, ¶¶ 18-29.

In early January 2012, Mr. Coram asked the MPD if it would install a surveillance camera in the common area of the building at 2400 E. Main Street. Docket No. 2 at 8, ¶ 31. The MPD advised Mr. Coram that he should consider installing the device on his own because his dispute with Mr. Berry was civil in nature. Docket No. 2 at 8, ¶ 32. At or about 6:30 a.m. on January 6, 2012, two detectives from the MPD, Michael Watson and Lenny Abeyta, met with Mr. Coram and agreed to install the device as requested as a favor to Mr. Coram. Docket No. 2 at 8-9, ¶ 33.

On or about January 15, 2012, Mr. Berry noticed the camera, recognized its purpose, examined it, and, finding no evidence that it was the property of the MPD, removed the camera and brought it into his office. Docket No. 2 at 9, ¶ 37. Mr. Berry

---

[2]The complaint does not specify how Mr. Coram violated the agreement.

then telephoned the MPD and spoke with Sergeant Jake Suppes about the events of that morning, expressing his concern that the purpose of the camera was to track when his secretary left the office so that his business could be burglarized. Docket No. 2 at 10, ¶ 39. Later that day, Sergeant Suppes notified Detective Watson about Mr. Berry's call. Docket No. 2 at 10, ¶ 40. On or about March 19, 2012, plaintiff's office manager provided the camera to MPD Officer Luis Perez. Docket No. 2 at 11, ¶ 44.

On May 12, 2012, Detective Watson sought a warrant for Mr. Berry's arrest. Docket No. 2 at 11, ¶ 46. Detective Watson deliberately made false statements in his supporting affidavit, intending to mislead the judge.[3] *Id*. Mr. Berry was arrested, detained, and prosecuted in the County of Montrose. Docket No. 2 at 11, ¶ 47. The case was terminated in Mr. Berry's favor. Docket No. 2 at 11, ¶ 48. Neither Detective Watson nor the MPD maintained reliable custody of the camera that Mr. Berry had removed. Docket No. 2 at 12, ¶ 50. As a result of this prosecution, Mr. Berry sustained economic damages in the form of harm to his business and noneconomic damages in the form of emotional distress and damage to his reputation. Docket No. 2 at 12, ¶ 52.

On April 30, 2013, plaintiff brought this case pursuant to 42 U.S.C. § 1983, alleging that (1) Detectives Watson and Abeyta violated Mr. Berry's rights under the Fourth and Fourteenth Amendments to be free from malicious prosecution; (2) Montrose is liable for the detectives' actions under *Monell v. New York City Dep't of*

---

[3]Although Mr. Berry alleges that the affidavit contains false information, neither the complaint nor the brief in response to the motion to dismiss filed by Detective Watson identifies any information that is allegedly false or specifies why any information in the affidavit would be false. *See generally*, Docket Nos. 2 and 23. Rather, plaintiff appears to rely on omissions of information which, if included in Detective Watson's affidavit, would defeat probable cause. *See, e.g.*, Docket No. 23 at 10.

3

*Soc. Servs.*, 436 U.S. 658 (1978); (3) Detectives Watson and Abeyta and Mr. Coram entered into a civil conspiracy to violate Mr. Berry's constitutional rights; and (4) Mr. Coram breached the Articles of Agreement.  Docket No. 2 at 15-24, ¶¶ 65-110.  Mr. Berry seeks compensatory economic and noneconomic damages, attorney's fees and costs, and pre- and post-judgment interest.  Docket No. 2 at 24-25, ¶¶ A-E.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alteration marks omitted).

## III.  ANALYSIS

### A.  Constitutional Violation

Mr. Berry alleges that Detectives Watson and Abeyta violated his rights under the Fourth and Fourteenth Amendments by maliciously prosecuting him without

probable cause. Docket No. 2 at 16-17, ¶ 71 ("Defendant's Detectives Watson and Abeyta violated Plaintiff's Fourth and Fourteenth Amendment rights, to be free from malicious prosecution without probable cause and without due process when they worked in concert to secure false charges against the Plaintiff which resulted in the confinement and prosecution of the Plaintiff."). Detectives Watson and Abeyta counter that they are entitled to qualified immunity because Mr. Berry cannot demonstrate an underlying constitutional violation. Docket No. 19 at 3-7.

The doctrine of qualified immunity "shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In addition, it provides a defense to trial and the other burdens of litigation such as discovery. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). A court is to resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

Given that Detectives Watson and Abeyta have invoked qualified immunity, the burden shifts to Mr. Berry to show that (1) the detectives' actions violated a specific constitutional right and (2) the constitutional right allegedly violated was clearly established at the time of the conduct at issue. *Pearson*, 555 U.S. at 231; *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). Mr. Berry must satisfy both prongs of this two-part test in order to survive the qualified immunity defense. *Pearson*, 555 U.S.

at 236. However, defendants' invocation of qualified immunity does not impose a heightened pleading requirement on Mr. Berry. *See Peterson v.* Jensen, 371 F.3d 1199, 1202 n.3 (10th Cir. 2004) ("Although we previously employed a heightened pleading standard in qualified immunity cases, we have abolished that requirement.") (citing *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001)).

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that a court may review the two prongs of a qualified immunity defense in any order, using its discretion to determine which of the factors to review first in light of the circumstances of the case. *Id.* at 236. The Court begins by considering whether Mr. Berry's allegations demonstrate that defendants violated a constitutional right.

The Fourth Amendment of the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. Amend. IV. A claim for malicious prosecution under 42 U.S.C. § 1983 may be grounded in the rights guaranteed by the Fourth Amendment. *Wilkins v. DeReyes*, 528 F.3d 790, 797 n.4 (10th Cir. 2008). Such a claim requires a showing that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id*. at 799.

Defendants argue that Mr. Berry has not alleged personal participation on the part of Detective Abeyta as is required for a § 1983 claim. Docket No. 19 at 5. They

further argue that Mr. Berry fails to state a claim for malicious prosecution because he does not sufficiently allege the elements of malice or a lack of probable cause. *Id*.

### 1. Detective Abeyta

The Court agrees with defendants that Mr. Berry has not alleged personal participation on the part of Detective Abeyta in the alleged malicious prosecution. Section 1983 "imposes liability for a defendant's own actions" and thus "personal participation in the specific constitutional violation complained of is essential." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011). A plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011), the court noted that in a civil rights case asserting claims against individual government actors, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against an entire group of defendants.

Mr. Berry claims only that Detective Abeyta met with Detective Watson and Mr. Coram and assisted with the installation of the camera. Docket No. 2 at 8, ¶ 33. Mr. Berry's arrest and prosecution were legally caused by Mr. Berry's action in removing the camera and Detective Watson's action in seeking an arrest warrant. Mr. Berry's claim against Detective Abeyta fails to satisfy the personal participation requirement under § 1983. *See Ashcroft*, 556 U.S. at 676.

### *2. Detective Watson*

An individual who is arrested pursuant to a warrant may challenge the probable cause determination underlying the issuance of the warrant. *Wilkins*, 528 F.3d at 798. Mr. Berry alleges that he was detained pursuant to a warrant and that the criminal case against him was terminated in his favor, presumably due to the charges being dropped. Docket No. 2 at 11, 12 ¶¶ 46-47, 53. Mr. Berry argues that he sufficiently alleges lack of probable cause insofar as the complaint states that the affidavit signed by Detective Watson omits the following information: (1) that Mr. Coram's police reports were determined to be false; (2) that the defendant detectives installed the surveillance camera as a favor to Mr. Coram; and (3) that Mr. Berry only removed the camera because he believed it had been installed to facilitate a burglary of his business and did not remove it with the intent to steal it. Docket No. 23 at 10.

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). If "hypothetically correcting" an alleged misrepresentation or omission in an arrest warrant affidavit "would not alter the determination of probable cause, the misconduct was not of constitutional significance and is not actionable under § 1983." *Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir.

2006).

The crime for which Detective Watson considered he had probable cause to believe that Mr. Berry committed was second-degree criminal tampering. Docket No. 19-1. "[A] person commits the crime of second degree criminal tampering if he tampers with property of another with intent to cause injury, inconvenience, or annoyance to that person or to another." Colo. Rev. Stat. § 18-4-506. "Intent to cause injury, inconvenience, or annoyance" is distinct from an intent to steal. *See People v. Banuelos*, 577 P.2d 305, 306 (Colo. App. 1977) ("Here, the same evidence from which the jury could infer an intent to steal, and thus a violation of the first degree criminal trespass charge, would also support an inference that he merely intended to cause 'injury, inconvenience or annoyance.'"). Detective Watson's affidavit states, in pertinent part:[4]

> 3. On the afternoon of January 5, 2012, I was contacted by Sergeant BERNIE CHISM of the Montrose Police Department and asked to assist with an investigation involving a landlord-tenant dispute at the building located at 2400 E. Main St., in the City of Montrose, Montrose County, Colorado. CHISM explained to me that he had been investigating a series of reports, which involved the damage to the interior of a building, which was believed to have been caused by a tenant of the building, SCOTT BERRY (AKA ROBERT SCOTT BERRY).
>
> 4. CHISM advised me that he had received a report from the landlord, who is described as the president of the Homeowner's Association, GARY CORAM. CORAM was reporting that over a period of time a number of incidents have occurred in which the building's interior was damaged.

---

[4]The Court may consider Detective Watson's affidavit because it is central to Mr. Berry's claim, the parties do not dispute the documents' authenticity, and defendants have submitted an indisputably authentic copy. *See* Docket No. 2 at 11, ¶¶ 46-47; Docket No. 19-1; *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir. 2007); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Larson v. Agos*, 449 F. App'x 725, 729 (10th Cir. 2011) (unpublished).

> CORAM advised CHISM that he had believed that the person who was creating the damage was SCOTT BERRY, due to the fact that BERRY's suite was foreclosed on and that he was resisting other rules of the association. CORAM was asking if a hidden surveillance camera, and recording device, could be installed in a common area leading into the building from the rear. . . .
>
> 5. I worked out an agreement with CORAM to meet with him at approximate [sic] 5:30 a.m. on the morning of January 6, 2012, at which time Detective LENNY ABEYTA and I would install the surveillance camera and recording device. Upon meeting with CORAM, the surveillance equipment was installed in the hallway, with the camera facing towards the entry door. . . .
>
> 7. I was contacted by Sergeant JAKE SUPPES of the Montrose Police Department, and was advised that on the early morning of January 15, 2012 he had been contacted by SCOTT BERRY, and was advised by BERRY that he (BERRY) had discovered the camera when he entered into the hallway. BERRY advised SUPPES that he was the one who removed the camera, providing an excuse saying that he thought that the management of the building was trying to videotape his secretary as she was leaving so that they could burglarize his business. However, BERRY left out when telling SUPPES about the incident, that he had erased the recorded data on the VHS recorder.
>
> 8. I have made multiple attempts to recover the stolen video camera that was taken by BERRY, even having sent uniformed police officers to his business on numerous occasions.

Docket No. 19-1 at 1-2, ¶¶ 3, 4, 5, 7, and 8.

Taking as true Mr. Berry's interpretation of the affidavit and reading his alleged omissions into the affidavit, the affidavit is nonetheless sufficient to establish probable cause on a charge of second-degree criminal tampering. *Cf. Wilkins*, 528 F.3d at 805 (to determine the existence of probable cause where plaintiff alleges an arrest warrant contains false information, the false information is set aside). The affidavit states–and Mr. Berry alleges in his complaint–that he knew that the camera was not his property and that he intentionally removed it with the intent to prevent it from functioning. The affidavit indicates that Mr. Berry refused to return the camera despite numerous efforts

10

by the police to contact him. *Compare* Docket No. 2 at 9-10, ¶¶ 36-39 *with* Docket No. 19-1 at 2, ¶ 7. The MPD was not required to establish Mr. Berry's intent to steal the camera–only his intent to cause "injury, inconvenience or annoyance" to the camera's owner. *See Banuelos*, 577 P.2d at 306.

Considering the alleged omissions, namely, that the MPD investigated Mr. Coram's previous complaints about Mr. Berry–including the complaint that Mr. Berry damaged the interior of the building, *see* Docket No. 19-1 at 1, ¶ 3–and did not find probable cause to arrest Mr. Berry, concluding instead that the dispute between the two parties was not criminal in nature, Docket No. 23 at 5, 10, the affidavit is nevertheless sufficient to establish that Detective Watson had probable cause to believe that Mr. Berry committed the crime of second-degree criminal tampering. The alleged omissions do not alter the conclusion that Mr. Berry intentionally removed the camera, erased the surveillance tape, and refused to return the camera to the police despite their numerous efforts to recover it.[5]

As Mr. Berry has failed to establish a lack of probable cause for his arrest, he does not state a § 1983 claim against Detective Watson for malicious prosecution in violation of the Fourth Amendment. *See Grubbs*, 445 F.3d at 1278. The Court need not consider the second prong of the analysis in order to conclude that defendants Watson and Abeyta are entitled to qualified immunity on plaintiff's Fourth Amendment claim. *See Pearson*, 555 U.S. at 236.

---

[5] Although Mr. Berry does not allege or argue that there are factual disputes precluding the granting of defendants' motion to dismiss, by virtue of the Court assuming that plaintiff's allegations are true, that concern is obviated.

### B. Municipal Liability

Mr. Berry alleges that Montrose is liable for the alleged constitutional violations of Detectives Watson and Abeyta. Docket No. 2 at 18-21. However, a municipality may not be held liable on a § 1983 claim in the absence of an underlying constitutional violation committed by its officers or employees. *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006). Thus, Mr. Berry fails to state a claim against Montrose.

### C. State Law Claims

Mr. Berry asserts two supplemental state law claims: breach of contract and civil conspiracy. Docket No. 2 at 2-25. As the Court is dismissing Mr. Berry's federal claims, it declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) ("pendent jurisdiction over state claims is exercised on a discretionary basis and . . . if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (internal citations and alterations omitted).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Gary Coram's FED.R.CIV.P. 12(b)(6) Motion to Dismiss [Docket No. 17] is GRANTED in part. Mr. Berry's third and fourth claims are dismissed without prejudice. It is further

**ORDERED** that the Motion to Dismiss [Docket No. 19] filed by defendants City of

Montrose, Michael L. Watson, and Lenny Abeyta is GRANTED in part. Plaintiff's first claim for relief is dismissed without prejudice. Plaintiff's second claim for relief is dismissed. It is further

**ORDERED** that this case is CLOSED.

DATED March 12, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge
